————————o————————

## WOODRUFF *v.* GARNER.

COUNTER-CLAIM.—The counter-claim under the code is more than recoupment at the common law. It embraces also the cross-bill in equity against the plaintiff.

SAME.—In a suit by the grantor to rescind a conveyance of land, on the ground of fraudulent representations, a counter-claim denying the fraud and alleging that the plaintiff has wrongfully kept the defendant out of possession, and asking judgment for possession and for rents and profits, is within the statute.

SAME.—But causes of action which cannot be joined in a complaint, cannot be joined in a counter-claim, and as a demand for waste is not incident to the recovery of the possession of the real estate, it was not properly joined in the counter-claim.

INSTRUCTIONS.—The Supreme Court will not, in order to affirm a case on the ground that an erroneous instruction was harmless, indulge the presumption that the instruction was not applicable to the case.

FRAUD.—FALSE REPRESENTATIONS.—If a statement is in fact false, and is uttered for a fraudulent purpose, which is accomplished, it has the whole effect of fraud in annulling the contract, although the person uttering the statement did not know it to be false, but believed it to be true.

APPEAL from the *Rush* Circuit Court.

FRAZER, J.—The appellant sued the appellee to obtain the rescission of a contract between the parties for the exchange of lands, and of a conveyance made in pursuance

of the contract, upon the ground that the contract and conveyance were induced by certain specified false and fraudulent representations of the defendant, as to facts and the law. The representation as to the law, alleged to have been falsely and corruptly made, is not alleged to have been known by the defendant to be false. The false representations of fact alleged are some of them of such a nature that if false the defendant might not have known it. The defendant answered in two paragraphs, the first of which was a special denial of the fraud alleged in the complaint; the second was in the form of a counter-claim, denying the alleged fraud, and averring that the plaintiff without right kept the defendant out of the possession of the lands conveyed to him in pursuance of the contract, and that he had committed waste upon the premises, to the injury of the freehold. Judgment for possession, and for damages for the waste, and for occupation of the premises, in all $1,500, was prayed. A demurrer to the counter-claim was overruled, after which an issue was formed upon it by a denial. A jury trial resulted in a general verdict for the defendant, that he was entitled to the possession of the land, and assessing his damages at $522 50. A motion by the plaintiff for a new trial was overruled, and judgment rendered in accordance with the verdict. The record gives us no information as to the nature of the evidence.

Three questions demand our consideration.

1. Was the counter-claim good on demurrer?

It is not questioned that it averred facts sufficient, in an independent suit, to entitle the defendant to a judgment, but it is urged that those facts could not be pleaded by way of counter-claim in this suit.

A counter-claim is defined by the code to be "any matter arising out of or connected with the cause of action, which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim for damages." 2 G. & H., 91.

It may not be easy to define the full meaning and application of this statute, and it will therefore be safer, and less likely to produce confusion, if this court shall at present consider only the question of its influence upon the case immediately in judgment. To say, as was inadvertently done in *Slayback* v. *Jones*, 9 Ind. 470, that the counter-claim is the same thing as recoupment, would be giving a definition obviously less comprehensive than that given by the statute above quoted. The counter-claim thus authorized comprehends recoupment, and much more. It hardly admits of question that it embraces, also, what was known as the cross-bill in equity against the plaintiff. Unless this be so, it would result that, in many cases, what formerly might have been fully settled in one litigation, would, under the code, require two or more separate suits to determine it. This is not the spirit of the code. Indeed, precisely the contrary is evident from section 60, the effect of which is to require every defendant personally served with notice of the suit, to set up and litigate in that case every right of action which he has, arising out of the contract or transaction which forms the plaintiff's cause of action, under penalty of paying his own costs, should he afterwards sue for the same matter. The two sections, 59 and 60, relate to the same subject. The latter evidently refers to one class of cases, at least, in which by the former a counter-claim is authorized to be pleaded. Different phraseology is employed in these two sections, but the idea embodied in section 59 by the language, "any matter arising out of, or connected with, the cause of action, which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages," may not all be expressed in section 60, thus: "a counter-claim arising out of the contract or transaction set forth in the complaint as the ground of the plaintiff's claims, or any of them." When the sections are carefully compared, it excites the inquiry whether there are not two distinct classes of cases in which the defendant may set up, by way of

counter-claim, a cause of action which he has against the plaintiff, viz: 1. When it arises out of the plaintiff's cause of action; 2. When it is connected with it, but does not arise out of it, and that in the former case he must set it up by way of counter-claim, or recover no costs in another suit upon it, while in the latter case there is no penalty for failing to set it up. The only reason for this distinction, if it exists, would be in the possible fact that in the former case the defendant's right of recovery may be shown upon the trial without complicating the investigation, while in the latter the inquiry must extend beyond what is necessary to a mere determination of the plaintiff's claim, and may often so incumber the record as to make a correct decision difficult. But this question is not before us, and we intimate no opinion upon it.

In the case in hand, the plaintiff's cause of action is the alleged fraud of the defendant in procuring the deed sought to be rescinded. The defendant's cause of action, averred in the counter-claim, does not arise out of the plaintiff's cause of action, for it cannot even exist consistently with it. If the fraud alleged by the plaintiff was perpetrated, then the defendant cannot have any right of action whatever. So the defendant found it necessary to deny the fraud.

But the deed sought to be set aside constitutes a part of the transaction upon which the plaintiff and the defendant both rely for a recovery. It is the link which forms a direct connection between the two diverse causes of action. So the counter-claim for possession is "connected with the cause of action" of the plaintiff directly, and is therefore authorized by the statute. In litigating either claim separately, an important question, to-wit, the alleged fraud, must be investigated, inasmuch as it is necessarily a question in controversy. If that question be decided for the defendant, then, a single additional fact being established—that the plaintiff keeps him out of possession of the land conveyed— entitles the defendant to a recovery. There is, then, one question common to both claims. Why should this be twice

tried? We think that the object of the statute was to enable the parties, by a single litigation, to settle whatever claim either may have directly dependent upon such a question, and thus avoid a multiplicity of suits. *Judah* v. *The Vincennes University*, 16 Ind. 56, goes even beyond this ruling. The demurrer to the counter-claim was, in our opinion, properly overruled.

2. Could the defendant, under this counter-claim, recover for waste or use and occupation? The plaintiff asked an instruction to the jury that he could not recover for either, which was refused.

To determine this question, the counter-claim may be considered as a complaint by the defendant against the plaintiff. Causes of action which could not be united in a complaint cannot be joined in a counter-claim. But the remedy for a misjoinder of causes of action is by demurrer, (2 G. & H., 80,) and this court cannnot review the ruling of the court below upon it. *Id.* 81. Mesne profits may be recovered as damages in an action for possession of real estate. They are incident to the recovery of possession. *Id.* 97, 283, 378. We think that such damages were recoverable under this counter-claim. But the claim for damages for injury to the freehold is not incident to the subject matter which was admissible as a counter-claim in this case, and, indeed, could not have been properly joined with it in the same suit. This was not, therefore, a proper counter-claim, and should not have been allowed in this case. 2 G. & H., 97. If the views already expressed are correct, it follows that the instruction went too far, and was properly refused.

3. The court instructed the jury that "false and fraudulent representations," made by the defendant to the plaintiff, upon which the latter relied in making the contract, would not avail the plaintiff in the case, unless it also appeared that the defendant, at the time of making the representations, knew them to be false. The appellant complains of this instruction. We cannot conceive of a state

of the evidence, under the issues of this case, which would justify this instruction. We can well understand that there may be, and are, many cases in which, for the purpose of proving that false representations are fraudulent, it is necessary to show that the party who made them knew that they were false. But we know of no case where relief will be denied in equity on account of false and fraudulent representations upon which a party has relied to his injury, merely because the proof fails to show that the party who perpetrated the fraud knew that his representations were false. If to such a state of the case were superadded proof showing such circumstances as would have evinced that it was the plaintiff's own folly to rely upon the representations,— for example, that he had merely to open his eyes and see the truth for himself,—then the plaintiff could not recover. But then the instructions would be erroneous against him, and not applicable to the issues in this case. We cannot, in order to affirm a case upon the ground that an erroneous instruction was harmless, indulge the presumption that the instruction was not applicable to the case.

The law is thus stated by an elementary writer: "If the statement be in fact false, and be uttered for a fraudulent purpose, which is in fact accomplished, it has the whole effect of fraud in annulling the contract, although the person uttering the statement did not know it to be false, but believed it to be true." 2 Parsons on Con. 775, (5th ed.) The following cases are to the same effect: *Taylor* v. *Ashton*, 11 M. & W. 401; *Warner* v. *Daniels*, 1 Woodb. & Min. 90; *Ainslie* v. *Medlycott*, 9 Ves. 13; *Shackleford* v. *Haudley*, 1 A. K. Marshal 500; *Munroe* v. *Pritchett*, 16 Ala. 785. Nor are we without authority of like character in Indiana. *McCormick* v. *Malin*, 5 Blackf. 509, is directly to the point.

The appellee relies upon *Zehner* v. *Kepler*, 16 Ind. 290. We need not question that decision. Under the defense of fraud as pleaded in that case, proof of the *scienter* was necessary. But what is said in that case to be a general rule has no application to a case like this, and, indeed, there are so

many exceptions to it, that it may be worthy of inquiry whether it is exactly accurate to say that it is a general rule.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*B. F. Claypool, J. M. Wilson, G. Holland* and *H. C. Hanna,* for appellant.

*N. Trusler* and *W. Morrow,* for appellee.